**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
|     Robert M. Pfender and | | |
|     Patricia A. Pfender, | : | |
| Debtors. | : | Bankruptcy No. 19-13080-MDC |
| | : | |
| KeyBank National Association, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 20-00233-MDC |
| Patricia A. Pfender, | : | |
| Defendant. | : | |
| | : | |

# <u>MEMORANDUM</u>

## I.    INTRODUCTION

KeyBank National Association ("KeyBank" or the "Plaintiff") brought the above-captioned adversary action against Patricia A. Pfender ("Patricia" or the "Defendant," and together with the Plaintiff, the "Parties") for a determination that her debt to KeyBank is nondischargeable pursuant to §§523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). Pending before the Court is the Plaintiff's motion for summary judgment (the "Summary Judgment Motion"). For the reasons set forth herein, the Court will deny the Summary Judgment Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>Relationship Between the Parties</u>

In February 2014, an entity called Consolidated Merchandise, Inc. ("CMI") submitted a Small Business Credit Application (the "CMI Loan Application") to First Niagara Bank, N.A.

("First Niagara"), for a $50,000.00 line of credit. The CMI Loan Application, which Patricia

signed, identified her as CMI's President. Also in February 2014, an entity called Cargo Express

Inc. ("Cargo Express") submitted a Small Business Credit Application (the "Cargo Express Loan

Application," and together with the CMI Loan Application, the "Loan Applications") to First

Niagara, for a $75,000.00 line of credit. The Cargo Express Loan Application was also signed

by Patricia and identified her as Cargo Express's President.

In connection with the Loan Applications, CMI and Cargo Express each submitted

Business Overview Worksheets (each, a "Worksheet") to First Niagara, completed by hand.[1]

The Worksheets were relatively bare-bones, requiring basic information about each entity's

business. Both CMI's Worksheet and Cargo Express's Worksheet identified Patricia as the

respective entities' 100% owner. Both CMI's Worksheet and Cargo Express's Worksheet

responded, "Very Good" to the question "How is the business performing?" and responded,

"Steady Growth" to the question "Describe any significant changes in the business in the last 2

years." The Worksheets are not signed by Patricia or any other individual.

In late September 2018, KeyBank[2] made a loan to CMI in the original principal amount

of $15,000.00 (the "CMI Loan"). Patricia executed the promissory note for the CMI Loan (the

"CMI Note") as Vice President. Patricia also executed a Commercial Guaranty in connection

with the CMI Loan (the "CMI Guaranty"), absolutely and unconditionally guaranteeing full and

---

[1] CMI's Worksheet actually lists Patricia as the Applicant, but the Worksheet is dated the same as the
CMI Loan Application, and therefore clearly simply misstated the Applicant as Patricia rather than CMI.
See Summary Judgment Motion, at Exhibit A.

[2] The Court notes that it was not presented with evidence, and there was no allegation in KeyBank's
Complaint in this Adversary Action (the "Complaint"), Adv. Pro. Docket No. 1, that KeyBank is the
successor to First Niagara or that KeyBank's Loans to CMI and Cargo Express in 2018 were made
pursuant to the Loan Applications submitted to First Niagara in 2014. However, because the Court is
denying the Summary Judgment Motion on the merits, it need not determine the legal significance of this
gap in the factual record.

punctual payment of CMI's debt to KeyBank.

In early October 2018, KeyBank made a loan to Cargo Express in the principal amount of $50,000.00 (the "Cargo Express Loan," and together with the CMI Loan, the "Loans").  Patricia executed the promissory note for the Cargo Express Loan (the "Cargo Express Note," and together with the CMI Note, the "Notes") as Vice President.  Patricia also executed a Commercial Guaranty in connection with the Cargo Express Loan (the "Cargo Express Guaranty," and together with the CMI Guaranty, the "Guaranties"), absolutely and unconditionally guaranteeing full and punctual payment of Cargo Express's debt to KeyBank.

### B.       The Defendant's Bankruptcy and the Filing of the Complaint

The Defendant filed a voluntary petition under chapter 7 of the Bankruptcy Code on May 10, 2019.[3]  The Defendant's co-debtor husband, Robert M. Pfender ("Robert"), also filed on the same date.[4]  At the meeting of creditors held on July 9, 2019, pursuant to §341 of the Bankruptcy Code, Robert testified that Cargo Express had ceased operating in 2008.

The Plaintiff filed the Complaint on September 1, 2020.  The Complaint alleges that, as of November 26, 2019, the amount due under the CMI Note was $16,540.36, and the amount due under the Cargo Express Note was $52,609.62, plus continuing interest and attorney's fees and costs.  The Plaintiff asserts that the Defendant's obligations under the Guaranties should be deemed nondischargeable because the Defendant made false and misleading representations regarding the financial condition of CMI and Cargo Express in the documents submitted in connection with the Loans.  The Plaintiff cites Robert's admission that Cargo Express was not operating as of sometime in 2008, despite the Worksheet submitted in 2014 indicating that Cargo

---

[3] Bankr. Docket No. 1.

[4] Robert previously consented to waive his discharge.  Bankr. Docket No. 123.

Express's business performance was very good and experiencing steady growth.[5]

The Defendant answered the Complaint on September 24, 2020 (the "Answer"),[6] denying that she provided any information or documentation to the Plaintiff or had any knowledge of any such information or documentation or the accuracy of any such information or documentation.[7] The Defendant asserted that she had "absolutely no involvement in the dealings or operations or finances of either entity."[8]  The Defendant also asserted that KeyBank failed in its duty to investigate CMI and Cargo Express.[9]

### C.    The Summary Judgment Motion and Response

On March 24, 2021, the Plaintiff filed the Summary Judgment Motion.[10]  In its Summary Judgment Motion, the Plaintiff relies on the Defendant's admissions in her Answer and Robert's testimony at the meeting of creditors, as well as the Defendant's alleged responses (the "RFA Responses") to requests for admission the Plaintiff apparently served, to argue that there is no genuine dispute as to a material fact and that the Plaintiff is entitled to judgment as a matter of law.[11]  The Plaintiff first argues that notwithstanding the Defendant's position in her Answer and RFA Responses that she was not involved in the dealings or operations of CMI or Cargo Express and simply signed the Loan Applications, Notes, and Guaranties at Robert's direction, she is

---

[5] Complaint, at ¶¶18, 20.

[6] Adv. Pro. Docket No. 5.

[7] *Id. passim.*

[8] *Id. passim.*

[9] *Id.* at ¶26.

[10] Adv. Pro. Docket No. 15.  The Plaintiff filed its brief in support separately.  Adv. Pro. Docket No. 16. For ease of reference, the Court will refer to the motion and the brief collectively as the Summary Judgment Motion.

[11] The Plaintiff references and/or quotes the RFA Responses throughout the Summary Judgment Motion but did not attach them to the motion or supporting brief.

bound by those documents' terms whether or not she read or understood them.

The Plaintiff then turns to each of its four claims under §523(a), asserting that all elements have been established by the record.  With respect to §523(a)(2)(A), the Plaintiff asserts that the Defendant's debt under the Guaranties is nondischargeable because the Defendant and her husband submitted the Cargo Express Loan Application and Worksheet in 2014 knowing the representations regarding the financial condition of Cargo Express were false, given that it had ceased operations in 2008, which representations the Plaintiff justifiably relied on in extending the Loans in 2018.[12]  The Plaintiff also argues that the Notes include false and misleading misrepresentations because the Defendant executed them as an officer of CMI and Cargo Express, but now admits she had no role in or knowledge of the entities' operations.  The Plaintiff argues that, as a result, the Loans were obtained by false pretenses, false representations, and/or actual fraud.

With respect to §523(a)(2)(B), the Plaintiff points to the same facts, arguing that it would not have made the Loans had it known that Cargo Express was no longer operating.  It argues that the documents submitted in connection with the Loans were done so with the intent to deceive.  As such, the Plaintiff argues, the debt under the Guaranties is nondischargeable because the Debtor made materially false statements regarding CMI and Cargo Express's financial condition with intent to deceive, upon which the Plaintiff reasonably relied.

With respect to §523(a)(4), the Plaintiff argues that the Defendant signed the respective Notes as an officer of CMI and Cargo Express, despite now asserting that she had no knowledge of being an officer and that she never participated in the operations of either entity.  The Plaintiff

---

[12] The Plaintiff makes no argument as to why the cessation of Cargo Express's business in 2008 would render information in the CMI Loan Application false.

argues that the Defendant "had a duty to read and understand what she was signing," and therefore her debt in connection with the Loans is nondischargeable because it arose from her defalcation.

Finally, with respect to §523(a)(6), the Plaintiff asserts the Defendant's debt constitutes a "willful and malicious injury" to the Plaintiff because it is indisputable that the Plaintiff was harmed financially. The Plaintiff argues that "it follows that the debt is nondischargeable" pursuant to §523(a)(6).

In her response to the Summary Judgment Motion (the "Response"),[13] the Defendant reiterates her assertion that she did not participate in the operations of CMI or Cargo Express but was advised by Robert at the time the Loan Applications were submitted in 2014 that she was the President of each, as well as a shareholder, and therefore was required to sign the Loan Applications as President. The Defendant asserts that the Worksheets are in Robert's handwriting and were submitted to First Niagara by Robert, and "to Defendant's knowledge, the businesses were in good shape." The Defendant further asserts that at the time of the Loans in 2018, Robert represented to her that she was now the Vice President of each entity. In a nutshell, the Defendant's position from a factual standpoint is that she was a homemaker ignorant to the financial health of CMI and Cargo Express, which were managed solely by Robert, upon whom she relied on when signing the Loan Applications and Notes.

From a legal standpoint, the Defendant argues that the factual disputes regarding her knowledge of and role in CMI and Cargo Express and the level of her participation in completing and submitting the Loan Applications mean the Plaintiff is not entitled to summary judgment.

---

[13] Adv. Pro. Docket. No. 20. Like the Plaintiff, the Defendant filed her brief in support separately. Adv. Pro. Docket No. 21. Again, for ease of reference, the Court will refer to the Response and the supporting brief collectively as the Response.

With respect to the Plaintiff's claims under §§523(a)(2)(A) and (B), the Defendant argues that

her limited knowledge of the entities and involvement with the Loan Applications, including

completion of the Worksheets, renders the Plaintiff unable to prove intent to deceive for

summary judgment purposes.  The Defendant also argues that the Plaintiff failed to prove it

justifiably relied on any misrepresentation in the Loan Applications or Loan documents, given its

lack of due diligence into the financial health of CMI or Cargo Express: "Simply put, Plaintiff, a

far more financially sophisticated participant than Defendant[,] failed to ask for a single tax

return, financial statement, document, instrument, or thing to verify the Defendant's husband's

claim that business was 'very good'."  With respect to the Plaintiff's claim under §523(a)(4), the

Defendant argues that the statute requires defalcation or fraud in a fiduciary capacity, but the

Plaintiff has not proven or even alleged the existence of one.  Finally, with respect to the

Plaintiff's claim under §523(a)(6), the Defendant argues that the Plaintiff must prove the

Defendant had actual knowledge that the harm to the Plaintiff was substantially certain, and no

such showing has been made here.  The Defendant asserts that the Loans were paid "for some

period of time and Defendant had no reason to believe the businesses would be unable to pay

them."

     The Court held a hearing on the Summary Judgment Motion on April 28, 2021, at which

time it requested the Parties to submit supplemental briefs (each, a "Supplemental Brief") on two

issues: (a) whether the Defendant's actions, in signing the Loan Applications and Notes as an

officer of CMI and Cargo Express despite having no involvement with either entity, were

sufficient to satisfy §523(a)(2)(A) and (B)'s "intent to deceive" requirement as a matter of law

because they constituted reckless disregard or reckless indifference for the accuracy of the

information contained therein, and (b) whether the Plaintiff reasonably relied on the

misinformation in the Loan Applications and Notes when extending the Loans, for purposes of §523(a)(2)'s reasonable reliance requirement.  The Parties submitted their respective Supplemental Briefs on May 28, 2021.[14]

In its Supplemental Brief, the Plaintiff cites *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108 (3d Cir. 1995) to argue that the intent to deceive requirement of §523(a)(2)(A) can be established by proving reckless indifference to or reckless disregard of the accuracy of information in a financial statement when the totality of the circumstances supports such an inference.  The Plaintiff also cites *U.S. Sec. & Exch. Comm. v. Bocchino (In re Bocchino)*, 794 F.3d 376 (3d Cir. 1995) to argue that gross recklessness satisfies the intent requirement of §523(a)(2)(A).  The Plaintiff argues that the Defendant's reckless disregard and reckless indifference to the truth is established by her having executed the Loan Applications and Notes as an officer and shareholder of CMI and Cargo Express despite having no involvement in the business, no involvement in the preparation of the Loan Applications and Notes, and no information as to their accuracy.  According to the Plaintiff, "[t]his willful blindness satisfied the 'intent to deceive' elements by demonstrating her lack of confidence in the accuracy of the information that she provided and her acknowledgement that she did not have basis to make the representations contained in the loan applications."

The Plaintiff also cites *Cohn* to argue that it reasonably relied on the information in the Loan Applications, because that case holds that the reasonableness of a creditor's reliance under §523(a)(2)(B) is judged by an objective standard, considering three factors: (a) the creditor's standard practices in evaluating credit-worthiness; (b) the standards or customs of the creditor's industry in evaluating credit-worthiness; and (c) the surrounding circumstances existing at the

---

[14] Adv. Pro. Docket Nos. 23, 24.

time of the debtor's application for credit.  The Plaintiff asserts that its standard practice, and the standard practice in the industry for loans like the Loans here, was to have the applicant submit a loan application providing basic financial information, and based upon that information, a decision is made as to whether to loan to the applicant.  The Plaintiff therefore contests the Defendant's argument that the Plaintiff was unreasonable in not obtaining financial statements or tax returns from CMI and Cargo Express prior to lending.  The Plaintiff also argues that there were no red flags that Cargo Express was not operating at the time of the Loan Applications or the Loans.

In her Supplemental Brief, the Defendant also cites *Cohn*, but argues that under its "totality of the circumstances" lens, intent to deceive has not been proven.  The Defendant argues that she was unsophisticated as to financial and business matters, relying on Robert's representations with respect to the health of the CMI and Cargo Express businesses and the need to have her be an officer of them and sign the Loan documents in such capacities.  Given this, the Defendant argues, the Plaintiff has not proven a knowing intent to deceive or gross recklessness in the form of conscious disregard or willful blindness to a substantial and unjustifiable risk. With respect to whether the Plaintiff has proven reasonable reliance, the Defendant acknowledges *Cohn's* three-factor analysis for determining whether reliance was reasonable, but argues these considerations favor a determination that the Plaintiff's reliance was not reasonable. The Defendant asserts that the Plaintiff's practice of extending loans without conducting appropriate due diligence is "flawed beyond reason," and apparently should therefore not be countenanced.  The Defendant also asserts that, particularly following the 2008 financial crisis, it could not be considered industry practice to extend loans absent sufficient due diligence as to the creditworthiness of the borrower.  Finally, the Defendant argues that minimal investigation by

First Niagara in 2014 and KeyBank in 2018 would have revealed red flags as to the health of

CMI's and Cargo Express's businesses, making reliance on the representations in the

Questionnaires unreasonable.

## III.   DISCUSSION

A goal of the bankruptcy process is to provide debtors with a fresh start, and exceptions

to discharge are construed strictly against the creditor and liberally in favor of the debtor.  *Linder*

*v. Berry (In re Berry)*, 2012 Bankr. LEXIS 4668, at *8 (Bankr. W.D. Pa. Oct. 2, 2012) (*citing*

*Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995)).  The Plaintiff must

prove the elements of its nondischargeability claims by a preponderance of the evidence.  *Berry*,

2012 Bankr. LEXIS 4668, at *9 (*citing Grogan v. Garner*, 498 U.S. 279, 285 (1991)).

Here the Plaintiff has sought to do so at the summary judgment stage.  The standard for

evaluating a motion for summary judgment is well-established:

> Summary judgment is appropriate only when, drawing all reasonable
> inferences in favor of the nonmoving party, there is no genuine issue as to
> any material fact and the moving party is entitled to judgment as a matter
> of law.  *E.g., Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir.
> 2011); *In re Bath*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010).  In other
> words, summary judgment may be entered if there are no disputed issues
> of material fact, and the undisputed facts would require a directed verdict
> in favor of the movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112,
> 1115 (11th Cir. 1993).
>
> In evaluating a motion for summary judgment, the court's role is not to
> weigh the evidence, but to determine whether there is a disputed, material
> fact for resolution at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
> 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A genuine issue of
> material fact is one in which sufficient evidence exists that would permit a
> reasonable fact finder to return a verdict for the non-moving party.  *Id.* at
> 248.  In evaluating the record, the court must view the underlying facts
> and make all reasonable inferences therefrom in the light most favorable
> to the party opposing the motion.  *Montone v. City of Jersey City*, 709 F.3d
> 181, 189 (3d Cir. 2013); *United States v. 717 South Woodward St.*, 2 F.3d

529, 533 (3d Cir. 1993).  On the other hand, if it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court should enter judgment in that party's favor.  *Anderson*, 477 U.S. at 252.

*Fraction v. Jacklily, LLC (In re Fraction)*, 622 B.R. 642, 646-647 (Bankr. E.D. Pa. 2020).

When the non-moving party bears the burden at trial and the movant meets its burden of directing the court to items demonstrating the absence of a genuine issue of fact, the non-moving party must produce evidence sufficient to create a genuine issue.  *Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 435 (E.D. Pa. 2004).  That is, to survive summary judgment, the nonmovant must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## A.      The Section 523(a)(2)(A) Claim

Section 523(a)(2)(A) of the Bankruptcy Code excludes from discharge any debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. §523(a)(2)(A).  Count I of the Complaint asserts the Defendant's debt under the Guaranties is nondischargeable pursuant to §523(a)(2)(A) because "the Loans were obtained by false pretenses, false representations and/or actual fraud."  Complaint at ¶21.

In order for a plaintiff to prevail under the false representation provision of §523(a)(2)(A), it must demonstrate that (1) the debtor made representations knowing they were false; (2) the debtor made the representations with the intent and purpose of deceiving the plaintiff; (3) the creditor justifiably relied on the debtor's false representations; (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made. *Monarch Capital Corp. v. Bath (In re Bath)*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010).

11

The elements of establishing a claim for false pretenses are similar, but there is a distinction between a debt incurred by a false representation and one incurred by false pretenses: "the 'false representation' ground requires a showing that the debtor made a 'false or misleading statement about something.'  The second option, 'false pretense,' requires proof of an implied misrepresentation promoted knowingly and willingly that creates a misleading understanding of the transaction by the plaintiff." *Id.* at 387 (*quoting In re Giquinto*, 388 B.R. 152, 165 n.26 (Bankr. E.D. Pa. 2008)).  As such, a plaintiff alleging a debt was incurred by false pretenses must prove that: (1) there was an omission or implied misrepresentation; (2) promoted knowingly and willingly by the debtor; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff; and (4) which wrongfully induced the plaintiff to advance money, property or credit to the debtor. *Id.*  Whether asserting a false representation or false pretenses, a showing of fraudulent intent is required, and the court must look at the debtor's intention at the time the debt arose. *LL Lifestyle, Inc. v. Vidal (In re Vidal)*, 2012 Bankr. LEXIS 4198, at *47-48 (Bankr. E.D. Pa. Sept. 6, 2012).

Finally, to prevail on a claim of actual fraud under §523(a)(2)(A), the plaintiff must prove that: (1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the debtor made the representation with intent to deceive; (4) the plaintiff reasonably relied on the representation; and (5) the plaintiff suffered loss, which was proximately caused by the debtor's conduct. *Lewandowski v. Moeller (In re Moeller)*, 2014 Bankr. LEXIS 1236, at *19 (Bankr. D.N.J. Mar. 31, 2014); *see also In re Ritter*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009) (listing the same

elements needing to be proved in order for a debt to be declared non-dischargeable under

§523(a)(2)(A)).

Two principles apply generally to claims under §523(a)(2)(A).  First, an affirmative

misrepresentation from the debtor is not required for a debt to be deemed nondischargeable

under §523(a)(2)(A).  Rather, silence, omissions or a failure to disclose material facts on which a

transaction depends can bring a debt under the statute.  *See Wolstein v. Docteroff (In re*

*Docteroff)*, 133 F.3d 210, 216 (3d Cir. 1997) (a finding of "actual fraud" under section

523(a)(2)(A) may be predicated on a failure to disclose a material fact); *Lewandowski v. Moeller*

*(In re Moeller)*, 2014 Bankr. LEXIS 1236, at *19 (Bankr. D.N.J. Mar. 31, 2014) ("The first

element of fraud pursuant to Section 523(a)(2)(A) requires a material misrepresentation that

includes words (written or oral), conduct, or omissions.  This representation can come in the

form of silence.") (internal citations omitted).  Second, a plaintiff can prove a debtor had an

intent to deceive by establishing that the debtor acted with gross recklessness as to the truth.

*U.S. Sec. & Exch. Comm. v. Bocchino (In re Bocchino)*, 794 F.3d 376, 382 (3d Cir. 2015).

The Summary Judgment Motion argues that the Defendant committed a false

representation under §523(a)(2)(A) by signing the Loan Applications and Notes as an officer of

CMI and Cargo Express and submitting the Questionnaires representing that both entities had

very good financial health with prospects of steady growth.  The Defendant asserts that she was

uninvolved in the business or finances of the entities, relying on Robert's representation that she

was an officer of each and needed to execute the Loan documents as such.  The Defendant also

asserts that she never completed or reviewed the Questionnaires in connection with signing the

Loan Applications.

The Court finds that the Plaintiff has not met its burden to establish that there is no

genuine dispute as to the material facts that would entitle it to judgment as a matter of law on its

§523(a)(2)(A) claim for false representations.  First, it has not been established that the

Defendant was not an officer of the respective entities at the time she executed the Loan

Applications and Notes.  The Plaintiff cites answers the Defendant provided in the RFA

Responses that she "had absolutely no involvement in the dealings or operations or finances of

either entity" as establishing that she was not an officer of either entity.  Summary Judgment

Supporting Brief at 5.  The Defendant professed lack of involvement in the entities' businesses,

however, does not preclude her from having held a nominal officer title.  The Plaintiff has cited

to no evidence of record establishing that, notwithstanding the Defendant signing as an officer,

she was not in fact an officer.[15]  Therefore the Court cannot find, at the summary judgment stage,

that the Defendant's act of signing the Loan Applications and the Notes as an officer was a

misrepresentation.

Likewise, a genuine dispute exists as to whether the Defendant committed a

misrepresentation by the submission of the Questionnaires representing the solid financial health

of CMI and Cargo Express.  The Plaintiff relies on the Defendant having signed the Loan

Applications as evidence that she also completed, or at least reviewed, the handwritten

Questionnaires.  The Defendant, on the other hand, asserts that she only signed the Loan

Applications where directed by Robert, and did not participate in or even review their contents

when they were submitted, including the Questionnaires Robert completed.  These opposing

positions create a genuine dispute as to whether the Defendant saw or knew of the

Questionnaires and the responses therein, and therefore whether she (as opposed to Robert)

---

[15] Whether the Defendant was in breach of corporate or fiduciary duties, if she was a nominal officer,
given her professed total lack of involvement in the businesses, is another question not for resolution here.

committed a misrepresentation by their submission to First Niagara.

Furthermore, the Plaintiff argues that the Defendant's intent to deceive can be established by her reckless disregard for whether the information in the Loan Applications and Notes was accurate. In its Supplemental Brief, the Plaintiff cites *Cohn*, a case evaluating intent to deceive as required by §523(a)(2)(B), which holds that "a creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of information in the financial statement of the debtor when the totality of the circumstances supports such an inference." *Cohn*, 54 F.3d at 1119. The Plaintiff also cites *In re Bocchino*, 794 F.3d 376, 381 (3d Cir. 1995), which looked to the following principle of common law tort for guidance as to the scienter required under §523(a)(2)(A): "A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." (citing *Restatement (Second) of Torts,* §526). The Plaintiff argues that the Defendant's reckless disregard and indifference to the truth is established by her having executed the Loan Applications as President and 100% shareholder of CMI and Cargo Express without involvement in their preparation or information as to their accuracy: "This willful blindness satisfies the 'intent to deceive' elements by demonstrating her lack of confidence in the accuracy of the information that she provided and her acknowledgement that she did not have a basis to make the representations in the loan applications." Supplemental Brief at 3.

The Plaintiff is correct that reckless indifference to truth can establish the requisite intent to deceive. However, as discussed *supra,* it has not been established that the Defendant signing the Loan Applications as an officer of entities was, in and of itself, a misrepresentation,

regardless of how much or little she knew about the entities.  Nor has it been established that the

Defendant completed or reviewed the Questionnaires in which the entities' financial health was

represented to be very good.  The Plaintiff's attempt, on summary judgment, to equate the

Defendant's alleged reliance on Robert to complete and submit the Loan Applications with her

lack of confidence in the information therein or an acknowledgement that the information therein

was without any basis is not supported by anything in the record the Plaintiff cites.  As such, the

Plaintiff has not established, at this stage, that the Defendant was recklessly indifferent to

whether or not the information in the Loan Applications was accurate.

Finally, the Plaintiff has not established, for purposes of summary judgment, reasonable

reliance on the alleged misrepresentations in the Loan Applications and Notes.  The Plaintiff

relies on *Cohn's* holding that reasonable reliance requires consideration of three factors: (i) the

lender's standard practices, (ii) standard practices in the industry, and (iii) whether any red flags

existed that would have caused a prudent lender to suspect the info was inaccurate.  *Cohn*, 54

F.3d at 1117.  The Plaintiff argues that its standard practice, and the standard practice in the

industry for loans of this type, was to have the prospective borrower submit a loan application

that included basic financial information, upon which the Plaintiff and lenders in its industry then

base a determination whether to lend, without further investigation or inquiry.  Supplemental

Brief, at 5.  There is no evidence in the record on summary judgment, however, and the Plaintiff

points to none, establishing these as undisputed facts, or that there were no red flags with respect

to the Loan Applications or CMI and/or Cargo Express that should have triggered further

investigation.  Without establishing these key facts that would support a finding of reasonable

reliance under *Cohn*, the Plaintiff has not met its burden to establish that there is no genuine

dispute as to its reliance that would entitle it to judgment as a matter of law.

16

**B.   The Section 523(a)(2)(B) Claim**

Section 523(a)(2)(B) excludes from discharge any debt obtained by "use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."  11 U.S.C.§523(a)(2)(B).  Count II of the Complaint asserts the Defendant's debt under the Guaranties is nondischargeable pursuant to §523(a)(2)(B) because "the Loans were obtained by the Debtor's use of statements in writing upon which KeyBank justifiably relied and that the Debtor caused to be made with intent to deceive."  Complaint at ¶24.

The Court's discussion *supra* as to why the Plaintiff has failed to establish, at the summary judgment stage, the intent to deceive and reasonable reliance elements of its §523(a)(2)(A) claim apply equally with respect to the §523(a)(2)(B) claim.  The Court will therefore not repeat them here.

The Court also finds, however, that the Plaintiff has not established, for purposes of summary judgment, that there is not a genuine dispute as to the materiality of the alleged false representation that the Defendant was an officer of CMI and Cargo Express.  The *Cohn* court found that, for purposes of §523(a)(2)(B), a statement is materially false if it is an important or substantial untruth.  *Id.*, 54 F.3d at 1114.  A guidepost in whether it meets that threshold is whether the lender would have made the loan had it known of the debtor's true financial condition.  *Id.*  The *Cohn* court acknowledged that this includes "a certain reliance component," but materiality is still based on an objective standard, *i.e.*, is the misstatement substantial enough that a reasonable person would have relied upon it, even if the creditor did not in fact rely upon it (as distinguished from reasonable reliance under (B)(iii), which requires that a creditor actually

rely on the misrepresentation).  *Id.* at 1114-15.

The Plaintiff argues that "the Debtor's omission of the fact that Cargo Express, Inc. was not operating was material.  KeyBank would not have made the Loans … had it known that Cargo Express, Inc. was no longer operating."  Summary Judgment Supporting Brief at 10.  The Defendant, however, asserts that she was not aware Cargo Express was not operating since 2008, as Robert was entirely responsible for managing the business.  Robert, not the Debtor, testified at the §341 meeting of creditors that Cargo Express had not operated since 2008.  There is therefore a genuine dispute as to whether the Defendant was aware of Cargo Express's nonoperational status at the time she signed the Loan Applications in 2014 and/or the Notes in 2018.[16]  The Plaintiff also argues that nondischargeability under §523(a)(2)(B) is warranted based on the Defendant's alleged misrepresentation that she was an officer of CMI and Cargo Express.  The Plaintiff, however, has not established the materiality of that alleged misrepresentation under the *Cohn* standard, *i.e.*, that it constitutes a substantial untruth on which the Plaintiff relied in making the Loans, such that it would not have done so had it known that the Defendant was not an officer of the entities (particularly in light of the fact that the Loan Application was submitted in 2014, and the Loans on which the Plaintiff's claim is based were made four years later, in 2018). The Plaintiff, therefore, has not established, at the summary judgment stage, the materiality of the alleged misrepresentations that forms the basis of its §523(a)(2)(B).

### C.    The Section 523(a)(4) Claim

Section 523(a)(4) excludes from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. §523(a)(4).  Count III of the

---

[16] Moreover, this alleged misrepresentation relates only to Cargo Express, and therefore is irrelevant to any claim against the Defendant under §523(a)(2)(B) with respect to the CMI Loan Application or Loan.

Complaint asserts the Defendant's debt under the Guaranties is nondischargeable "as a result of the Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." Complaint at ¶29.

Section 523(a)(4) effectively presents three distinct causes of action: (1) fraud or defalcation while acting in a fiduciary capacity; (2) embezzlement; or (3) larceny. *Sibbet v. Presutti (In re Presutti)*, 540 B.R. 154, 169 (Bankr. W.D. Pa. 2015). To establish grounds for nondischargeability based on fraud or defalcation, a plaintiff must prove that the debtor acted as a fiduciary, while proof of a fiduciary relationship is not required for claims alleging embezzlement or larceny. *LL Lifestyle, Inc. v. Vidal (In re Vidal)*, 2012 Bankr. LEXIS 4198, at *59 (Bankr. E.D. Pa. Sept. 6, 2012).

Although the Complaint packages all three causes of action under §523(a)(4) into one paragraph in Count III, the Summary Judgment Motion only addresses defalcation, and in cursory fashion at that. The Plaintiff cites *In re McCormick*, 283 B.R. 680, 684 (Bankr. W.D. Pa. 2002) for the principle that negligence or innocent mistake which results in misappropriation or failure to account is sufficient to establish defalcation, then asserts that the Defendant's debt under the Guaranties is nondischargeable under §523(a)(4) because, notwithstanding her lack of knowledge of or participation in the entities, she signed the Notes as an officer of CMI and Cargo Express and had a duty to read and understand the Loan documents. Summary Judgment Supporting Brief at 11.

To prevail on this discrete cause of action, the Plaintiff must establish by a preponderance of evidence that the Defendant (1) acted in a fiduciary capacity and (2) engaged in fraud or defalcation while acting in such capacity. *Vidal*, 2012 Bankr. LEXIS 4198, at *65. "Fiduciary capacity" generally has a narrower meaning in bankruptcy than its traditional common law

19

definition.  *Vidal*, 2012 Bankr. LEXIS 4198, at *65; *Estate of Harris v. Dawley (In re Dawley)*,

312 B.R. 765, 777 (Bankr. E.D. Pa. 2004).  For purposes of §523(a)(4), a fiduciary relationship

requires an express or technical trust, and implied and constructive trusts are insufficient to

create a fiduciary relationship.  *Vidal*, 2012 Bankr. LEXIS 4198, at *66; *Dawley*, 312 B.R. at

777.  Thus, a trust imposed as a result of the wrongful act out of which the debt arose does not

fulfill the fiduciary capacity requirement – the debtor must have been a trustee before the wrong

occurred and without reference to it.  *Dawley*, 312 B.R. at 777.  An express trust under

Pennsylvania law requires that there be (1) a trustee, (2) an ascertainable res, and (3) a

beneficiary for whom the trust is held.  *Id.* (*citing Sherwin v. Oil City Nat. Bank*, 229 F.2d 835

(3d Cir. 1956), *Penn. Manufacturers' Assoc. Ins. Co. v. Desiderio (In re Desiderio)*, 213 B.R. 99

(Bankr. E.D. Pa. 1997)).  The parties must also manifest their intention to create a trust.  *Dawley*,

312 B.R. at 777.  An express or technical trust may also be "based on relationships in which trust

type obligations are imposed pursuant to statute or common law, provided that the statute

imposes specific trust duties with respect to a trust res."  *Kahle v. Roemmele (In re Roemmele)*,

2011 Bankr. LEXIS 3953, at *20 n.11 (Bankr. E.D. Pa. Oct. 11, 2011); *see also Tershon v.

Jurewicz (In re Jurewicz)*, 2003 Bankr. LEXIS 677, at *10 n.11 (Bankr. E.D. Pa. June 25, 2003).

If the Plaintiff establishes that the Defendant was in a fiduciary relationship with it within

the narrow scope of §523(a)(4), the Plaintiff must also establish that the Defendant committed

defalcation in that role.  Defalcation includes any failure to account for funds that have been

entrusted to a fiduciary.  *Vidal*, 2012 Bankr. LEXIS 4198, at *67 ("For purposes of section

523(a)(4), 'defalcation' is limited to situations where a fiduciary misappropriates or otherwise

fails to account for money or property held in her fiduciary capacity.")  Defalcation requires a

culpable state of mind involving knowledge of, or gross recklessness with respect to, the

improper nature of the relevant fiduciary behavior. *Bullock v BankChampaign, N.A.*, 569 U.S.

267, 269 (2013); *Fogg v. Pearl (In re Pearl)*, 502 B.R. 429, 440 (Bankr. E.D. Pa. 2013). *Bullock*

has been read to create two scienter levels that may constitute a nondischargeable defalcation: (1)

defalcation involving bad faith, moral turpitude, or other immoral conduct (such as self-dealing),

and (2) defalcation involving less-culpable recklessness, *i.e.*, a conscious disregard of, or a

willful blindness to, a substantial and unjustifiable risk. *Pearl*, 502 B.R. at 440.

The Plaintiff has failed to meet its burden for summary judgment on its claim under

§523(a)(4). The glaring omission from the Summary Judgment Motion with respect to the

Plaintiff's claim under §523(a)(4) is any discussion as to how the Defendant served in a fiduciary

capacity, under §523(a)(4)'s narrow view of that concept, with respect to the Plaintiff. The

Summary Judgment Motion does not address how this element is satisfied at all, and there is no

evidence the Plaintiff points to that allows the Court to draw the conclusion that a fiduciary

relationship existed. Even if the Plaintiff could be found to have established a fiduciary duty,

however, the Summary Judgment Motion does not establish that, by executing the respective

Loan Applications and Notes as an officer of CMI and Cargo Express, the Plaintiff

misappropriated or otherwise failed to account for money or property held in such fiduciary

capacity. There has been no evidence presented that the Defendant ever had possession, actually

or constructively, of the funds loaned to CMI or Cargo Express. The Defendant's position is that

she was entirely uninvolved in the businesses, including their finances. As a factual matter,

therefore, a genuine dispute exists as to whether the Defendant acted in a fiduciary capacity and

misappropriated the funds loaned to the entities or otherwise failed to account for them. The

Plaintiff has therefore not met its burden for summary judgment on its §523(a)(4) claim.

### D.        The Section 523(a)(6) Claim

Section 523(a)(6) excludes from discharge any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. §523(a)(6). Count IV of the Complaint asserts the Defendant's debt under the Guaranties is nondischargeable "as a result of the Debtor's willful and malicious injury caused to KeyBank by the Debtor." Complaint at ¶31.

The phrase "willful and malicious" as used in §523(a)(6) is narrowly defined. *Nat'l Fertilizers, Ltd. v. Vepuri (In re Vepuri)*, 2009 Bankr. LEXIS 2781, at *18-19 (Bankr. E.D. Pa. 2009) (*citing Kawaauhau v. Geiger*, 523 U.S. 57, 63, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998)). A debtor's actions can only be "willful and malicious" under §523(a)(6) "'if they either have a purpose of producing injury or have a substantial certainty of producing injury.'" *Id.* (*quoting In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994)). Merely because a debtor's conduct may have had "'a high probability of producing harm . . . does not establish that his conduct was substantially certain to produce [an] injury.'" *Harris v. Kamps (In re Kamps)*, 575 B.R. 62, 73 (Bankr. E.D. Pa. 2017) (*quoting In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994)).

As such, willful injury requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Id.* (*quoting Kawaauhau*). A party seeking a nondischargeability determination must show that the debtor actually intended to injure the party or its property; negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious. *Schlessinger v. Schlessinger (In re Schlessinger)*, 208 Fed. Appx. 131, 134 (3d Cir. 2006) (*citing Kawaauhau*); *Corcoran v. McCabe (In re McCabe)*, 588 B.R. 428, 433 (E.D. Pa. 2018) ("A debt is non-dischargeable under §523(a)(6) if the debt arises from an act done with 'actual intent to cause injury,' meaning there must have been a 'deliberate or

intentional injury …."") (*quoting Kawaauhau*).  Malicious injury requires (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.  *Id.* (*quoting In re Barboza*, 545 F.3d 702, 706 (9th Cir. 2008)).  A showing of specific malice is not required, and an injury can be malicious even in the absence of personal hatred, spite, or ill-will.  *Kamps*, 575 B.R. at 73.  However, in order to establish that an injury is malicious under §523(a)(6), the aggrieved party must prove that the debtor's conduct was motivated by some purpose other than the maximization of the debtor's personal financial interests.  *Sherwin Williams Co. v. Grasso (In re Grasso)*, 487 B.R. 434, 447 (Bankr. E.D. Pa. 2013) (*citing Jacobs*, 381 B.R. at 147).  In sum, in order to succeed on its claim that the Debtors are liable for willful and malicious injury under §523(a)(6), the Plaintiff must prove by a preponderance of the evidence that the Debtors intentionally caused injury to the Plaintiff through a wrongful act done intentionally, without just cause or excuse, motivated by some purpose other than their own financial gain.

The Plaintiff has failed to meet its burden for summary judgment on its claim under §523(a)(6).  After setting forth the legal standards for willful and malicious injury, the Plaintiff's entire argument as to why this standard has been met as a matter of law consists of the following: "It is indisputable that KeyBank was harmed financially, therefore, causing injury.  Therefore, it follows that the debt is nondischargeable pursuant to §523(a)(6)."  Summary Judgment Supporting Brief at 12.  This argument apparently equates financial harm with willful and malicious injury, notwithstanding the Plaintiff's acknowledgement that a showing of willfulness requires deliberate injury or at least substantial certainty that an action will cause injury, and that a showing of maliciousness requires the absence of just cause or excuse.  The Plaintiff has made no effort in the Summary Judgment Motion to show how undisputed facts in the record establish

these legal standards.  The basis of the Plaintiff's claims against the Defendant are that she

signed the Loan Applications and Notes as an officer of CMI and Cargo Express, and in

connection with the Loan Applications submitted the Questionnaires representing the financial

health of the entities.  The Defendant's position is that she had no involvement in the entities'

businesses and signed the documents at the direction of and in reliance upon Robert, who alone

was managing the entities.  There is a genuine dispute as to whether the Defendant deliberately

injured or had substantial certainty that she would injure the Plaintiff by signing the Loan

documents as an officer and whether she did so without just cause or excuse.  The Plaintiff has

therefore not met its burden for summary judgment on its §523(a)(6) claim.

## IV.    CONCLUSION

For the reasons discussed above, the Court will deny the Summary Judgment Motion.  An

Order consistent with this Memorandum will be entered.

Dated:  March 8, 2022

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Brian M. Kile, Esquire
Beth L. Slaby, Esquire
Grenen & Birsic, PC
One Gateway Center, 9th Floor
Pittsburgh, PA 15222

Kristine A. Michael, Esquire
Kristine A. Michael, P.C.
105-A E. Maple Avenue
Langhorne, PA 19047

24